UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DENNIS SIMON, NAHSHON SIMON, and VIVIAN SIMON,

No. 21-CV-6868 (WFK)(JRC)

                        Plaintiffs,

**AMENDED COMPLAINT**

               - against -

JURY TRIAL DEMANDED

THE CITY OF NEW YORK, MICHAEL JIMENEZ, ALEXANDER GRANDSTAFF, MATTHEW LAMENDOLA, HERBERT MARTIN, STEVEN VANMANEN, KATHERINE SILJKOVIC, OMAR VELIZ, MARK BROOKS, YUAN NEWTON, TANYA GREEN, DENISE GRANUM, and JOHN/JANE DOES NUMBERED 1-15,

                        Defendants.
------------------------------------------------------------------X

      Plaintiffs, Dennis Simon, Nahshon Simon, and Vivian Simon, as and for their Complaint against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

      1.     This is a civil rights action in which Plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State and City of New York.

      2.     The claims arise from a January 1, 2019 incident in which Members of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully forced their way into Plaintiffs' home and searched the apartment without a warrant or any other legal basis.

      3.     The NYPD then took Plaintiff Dennis Simon into custody at the NYPD's 75th Precinct without probable cause.  Mr. Simon was questioned for two days regarding a homicide that had occurred on January 1, 2019 at 1167 Stanley Avenue, Brooklyn, New York.

1

4. Plaintiff Dennis Simon was never charged with any crime resulting from any January 1, 2019 incident. Instead, NYPD Detectives Michael Jimenez, Alexander Grandstaff, Matthew Lamendola, Herbert Martin, Steven Vanmanen, Katherine Siljkovic, Omar Veliz, Mark Brooks, and Yuan Newton (together, the "Detective Defendants") coordinated with New York State Department of Corrections and Community Supervision ("DOCCS") Parole Officer Tanya Green and Senior Parole Officer Denise Granum (together, the "Parole Defendants") to imprison Plaintiff Dennis Simon while the NYPD conducted an investigation into the January 1, 2019 homicide. To do so, the Detective Defendants and the Parole Defendants agreed that Plaintiff Dennis Simon would be charged with a parole violation even though Defendants lacked reasonable suspicion or probable cause that Mr. Simon had violated his parole conditions of release in an important respect.

5. Plaintiff Dennis Simon was imprisoned in the Brooklyn House of Detention and at Rikers Island for more than a month before the parole warrant was lifted. During that time, Mr. Simon lost his job and was deprived of income.

6. For these unconstitutional acts and for violations of the New York City Administrative Code, Plaintiffs seek redress, including compensatory and punitive damages and such other relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

7. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights.

8. Supplemental jurisdiction exists over any and all state law claims that are related to the claims pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiffs' claims arose within the confines of this judicial district.

10. On or about March 26, 2019, and within ninety (90) days after the claims herein accrued, Plaintiff Dennis Simon served on the City of New York a timely Notice of Claim under New York General Municipal Law § 50-e.

11. In compliance with General Municipal Law § 50-h, a hearing was conducted on May 30, 2019.

12. Plaintiffs demand a trial by jury on each and every one of their claims.

## THE PARTIES

13. Plaintiffs, Dennis Simon, Nahshon Simon, and Vivian Simon, are residents of Kings County, New York.

14. Defendant City of New York (the "City") is a municipal corporation duly organized and existing under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York City Police Department, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD personnel. In addition, at all times relevant hereto, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

15. Defendant Michael Jimenez is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

16. Defendant Alexander Grandstaff is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

17. Defendant Matthew Lamendola is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

18. Defendant Herbert Martin is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

19. Defendant Steven Vanmanen is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

20. Defendant Katherine Siljkovic is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

21. Defendant Omar Veliz is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

22. Defendant Mark Brooks is a Detective in the NYPD or a retired Detective, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

23. Defendant Yuan Newton is a Detective in the NYPD, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

24. Defendants John/Jane Does 1-15, individuals whose names are currently unknown to Plaintiffs, are employees of the NYPD, who at all relevant times acted under color of state law, and who are sued in their individual capacities.

25. Defendant Tanya Green is a Parole Officer employed by DOCCS, who at all relevant times acted under color of state law, and who is sued in her individual capacity.

26. Defendant Denise Granum is a Senior Parole Officer employed by DOCCS, who at all relevant times acted under color of state law, and who is sued in her individual capacity.

## FACTUAL ALLEGATIONS

27. On January 1, 2019, Plaintiffs were inside their residence at 1165 Stanley Avenue, Brooklyn, New York when NYPD officers, including the Detective Defendants and John/Jane Does 1-15 (together, the "NYPD Defendants"), unlawfully entered the residence.

28. The NYPD Defendants searched the entire residence and, upon information and belief, did not find any contraband.

29. The NYPD Defendants did not have a warrant or other legal basis to enter or search the residence.

30. Defendants Jimenez and Grandstaff then instructed Plaintiff Dennis Simon to go with them to the NYPD's 75th Precinct to answer some questions.

31. Plaintiff Dennis Simon was then taken to the 75th Precinct by Defendants Jimenez, Grandstaff, and Siljkovic.

32. Defendants did not read Plaintiff Dennis Simon his *Miranda* rights prior to taking him to the 75th Precinct.

33. The Detective Defendants detained Plaintiff Dennis Simon at the 75th Precinct until approximately January 3, 2019.

34. During that time, Plaintiff Dennis Simon was questioned repeatedly by the Detective Defendants regarding a homicide that, upon information and belief, took place on January 1, 2019 at 1167 Stanley Avenue, Brooklyn, New York.

35. Plaintiff Dennis Simon was never charged with homicide or any other crime in connection with any January 1, 2019 incident.

36. On or about January 2, 2019, the Detective Defendants met with the Parole Defendants.

37. The Detective Defendants and the Parole Defendants agreed to imprison Plaintiff while the NYPD conducted an investigation into the January 1, 2019 homicide.

38. To do so, the Detective Defendants and the Parole Defendants agreed that Plaintiff would be charged with a parole violation even though Defendants lacked reasonable suspicion or probable cause that Dennis Simon had violated his parole conditions of release in an important respect.

39. On or about January 3, 2019, the Parole Defendants took Plaintiff Dennis Simon into custody at the 75th Precinct and brought him to the Brooklyn House of Detention.

40. Several days later, Defendant Green served Plaintiff Dennis Simon with a Notice of Violation that charged Plaintiff with a Violation of Rule 8 of his Conditions of Release, which stated that "I will not behave in such a manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment, nor will my behavior threaten the safety or well-being of others."

41. Plaintiff Dennis Simon was subsequently transferred to Rikers Island.

42. On January 15, 2019, a parole revocation hearing before an Administrative Law Judge ("ALJ") was held.

43. During the hearing, DOCCS's Parole Revocation Specialist acknowledged that it appeared that Plaintiff Dennis Simon did not violate any parole condition in an important respect.

44. The Parole Revocation Specialist told the ALJ that, according to Defendant Granum, Plaintiff was being held because he was a suspect in an NYPD investigation into the January 1, 2019 homicide.

45. The parole revocation hearing was adjourned.

46. On February 4, 2019, the parole revocation hearing continued.

47. During the February 4, 2019 hearing, the same Parole Revocation Specialist confirmed that Plaintiff Dennis Simon was being held at the behest of the NYPD based upon the homicide investigation.

48. The Parole Revocation Specialist acknowledged that DOCCS would not be able to sustain the parole violation charge.

49. The ALJ vacated the parole warrant following the February 4, 2019 hearing.

50. Plaintiff Dennis Simon was released from Rikers Island on or about February 7, 2019.

51. Plaintiff Dennis Simon was incarcerated for more than a month.

52. As a result of Defendants' conduct, Plaintiffs suffered loss of liberty, emotional and psychological pain, embarrassment, humiliation, harm to their reputations and deprivations of their constitutional rights.

53. Furthermore, because of his incarceration, Plaintiff Dennis Simon lost his job working for UPS and suffered loss of income.

## **FIRST CLAIM FOR RELIEF**

### **42 U.S.C. § 1983**

### **Unlawful Entry and Search Under the Fourth and Fourteenth Amendments**

### **(Against the NYPD Defendants)**

54. Plaintiffs repeat and reallege each and every allegation set forth above.

55. The NYPD Defendants entered Plaintiffs' residence without a warrant or any other legal basis.

56. As a result, the NYPD Defendants, acting under color of law, deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

57. Defendants failed to intervene in each other's obviously illegal actions.

58. Plaintiffs have been damaged because of Defendants' wrongful acts.

## SECOND CLAIM FOR RELIEF

## 42 U.S.C. § 1983

## False Arrest Under the Fourth and Fourteenth Amendments

## (Against the Detective Defendants)

59. Plaintiffs repeat and reallege each and every allegation set forth above.

60. By the actions described above, the Detective Defendants, acting under color of law, deprived Plaintiff Dennis Simon of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures, and to his liberty, by detaining, searching, arresting, and confining Plaintiff without any right or authority to do so.

61. Plaintiff Dennis Simon was conscious of his confinement and did not consent to it.

62. The Detective Defendants failed to intervene in each other's obviously illegal actions.

63. Plaintiff Dennis Simon has been damaged because of Defendants' wrongful acts.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Malicious Prosecution Under the Fourth and Fourteenth Amendments

### (Against the Detective Defendants)

64. Plaintiffs repeat and reallege each and every allegation set forth above.

65. By the actions described above, the Detective Defendants, acting under color of law, deprived Plaintiff Dennis Simon of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from malicious prosecution.

66. The Detective Defendants maliciously commenced and/or caused the continuation of parole revocation proceedings against Plaintiff Dennis Simon without probable cause or legal justification.

67. Defendants acted with actual malice.

68. The parole revocation proceedings terminated in Plaintiff Dennis Simon's favor.

69. The Detective Defendants failed to intervene in each other's obviously illegal actions.

70. Plaintiff Dennis Simon has been damaged because of Defendants' wrongful acts.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### *Monell* Liability

### (Against the City of New York)

71. Plaintiffs repeat and reallege each and every allegation set forth above.

72. Defendant City of New York maintains a custom and policy of failing to discipline police officers who violate the constitutional rights of persons in New York, which caused Plaintiffs to suffer the loss of liberty described in this Complaint.

73. Prior to January 1, 2019, policymaking officials of the NYPD—acting with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity; to the risk of arresting, prosecuting, and convicting innocent people; and to the rights of all criminal suspects and defendants to due process and a fair trial—implemented patently inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

   a. Unlawful entries and searches of residences by police officers;

   b. The duty of police officers not to make unprivileged arrests; and

   c. The duty of police officers not to fabricate evidence against criminal defendants or suspects.

74. The abovementioned deliberate or de facto policies, procedures, regulations, practices, and/or customs (including the failure to properly instruct, train, supervise, and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant City of New York, including but not limited to, the New York City Police Commissioner, who knew (or should have known):

   a. That such policies, procedures, regulations, practices, and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

   b. That such issues either present police employees with difficult choices of the sort that instruction, training, and/or supervision will make less difficult or that the need for further instruction, training, supervision, and/or discipline was

        demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

    c. That the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

75. The abovementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph based upon, among other circumstances:

    a. Credible allegations substantiated by the New York City Civilian Complaint Review Board ("CCRB") and the NYPD finding that the named individual Defendant(s) had illegally entered and searched residences;

    b. Civil lawsuits, some of which resulted in substantial verdicts, judgments, or settlements, credibly alleging that police had illegally entered residences, illegally searched residences, falsified, exaggerated, or withheld material evidence, or made false statements in reports and testimony;

    c. Judicial decisions criticizing the NYPD for failing to train and supervise officers on the requirements of the Fourth Amendment; and

    d. Formal reports of the New York City Comptroller's Office, the Bar Association of the City of New York, and other organizations criticizing the NYPD and the New York City Law Department for failing to follow up substantial civil settlements for police misconduct with disciplinary or other remedial action.

76. In February 2016, the CCRB released a report finding scores of incidents in a five-year period in which NYPD officers misapplied or misunderstood the legal standards required to

enter a home. The CCRB stated that, when conducted without proper constitutional authority, home searches are one of the most serious violations of privacy and, consequently, types of police misconduct that engender anger at and distrust of police authority.

77. Among other things, the report criticized the NYPD's Patrol Guide and other policies and procedures for failing to describe the type of legal justification needed for searches and seizures in homes.

78. In the report, the CCRB discussed the recurring police practices and misunderstandings of the law that led to improper entries, searches, and failures to show a warrant to occupants.

79. The CCRB also found that improper entries and searches resulted from officers' misunderstanding or misapplication of the Fourth Amendment.

80. Following the release of the CCRB report, the NYPD failed to implement further instruction, training, supervision, and/or discipline to rectify the problems detailed in the report.

81. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (and/or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters.

82. The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to compliance by NYPD employees with the abovementioned constitutional requirements.

83. During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiffs, which he knowingly and intentionally breached, or to which

he was deliberately indifferent, to implement policies, procedures, customs, practices, training, and discipline sufficient to prevent or deter conduct by his subordinates violating the constitutional rights of criminal suspects or defendants and of other members of the public.

84. In this case, the NYPD Defendants entered Plaintiffs' apartment without a search warrant and/or fabricated the basis for a search warrant application.

85. The aforesaid policies, procedures, regulations, practices, and/or customs of Defendant City and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the NYPD Defendants of Plaintiffs' rights under the Constitution and laws of the United States.

86. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiffs' constitutional rights and their constitutional injuries.

### FIFTH CLAIM FOR RELIEF

### N.Y.C. Admin. Code § 8-801 *et seq*.

### Unlawful Entry and Search

### (Against the NYPD Defendants and City of New York)

87. Plaintiffs repeat and reallege each and every allegation set forth above.

88. The NYPD Defendants are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

89. The NYPD Defendants entered Plaintiffs' residence without a warrant or any other legal basis.

90. As a result, the NYPD Defendants, acting under color of law, deprived Plaintiffs of their rights under N.Y.C. Admin. Code § 8-802 to be free from unlawful entries and unreasonable searches and seizures.

91. Defendants failed to intervene in each other's obviously illegal actions.

92. As the employer of the NYPD Defendants, the City is liable for Defendants' wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

93. Plaintiffs have been damaged because of Defendants' wrongful acts.

## SIXTH CLAIM FOR RELIEF

**N.Y.C. Admin. Code § 8-801 *et seq*.**

**False Arrest**

**(Against the Detective Defendants and City of New York)**

94. Plaintiffs repeat and reallege each and every allegation set forth above.

95. The Detective Defendants are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

96. By the actions described above, the Detective Defendants, acting under color of law, deprived Plaintiff Dennis Simon of his rights under N.Y.C. Admin. Code § 8-802 to be free from unreasonable searches and seizures, and to his liberty, by detaining, searching, arresting, and confining Plaintiff without any right or authority to do so.

97. Plaintiff Dennis Simon was conscious of his confinement and did not consent to it.

98. The Detective Defendants failed to intervene in each other's obviously illegal actions.

99. As the employer of the Detective Defendants, the City is liable for Defendants' wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

14

100. Plaintiff Dennis Simon has been damaged because of Defendants' wrongful acts.

## SEVENTH CLAIM FOR RELIEF

**N.Y.C. Admin. Code § 8-801 *et seq*.**

**Malicious Prosecution**

**(Against the Detective Defendants and City of New York)**

101. Plaintiffs repeat and reallege each and every allegation set forth above.

102. The Detective Defendants are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

103. By the actions described above, the Detective Defendants, acting under color of law, deprived Plaintiff Dennis Simon of his rights under N.Y.C. Admin. Code § 8-802 to be free from malicious prosecution.

104. The Detective Defendants maliciously commenced and/or caused the continuation of parole revocation proceedings against Plaintiff Dennis Simon without probable cause or legal justification.

105. Defendants acted with actual malice.

106. The parole revocation proceedings terminated in Plaintiff Dennis Simon's favor.

107. The Detective Defendants failed to intervene in each other's obviously illegal actions.

108. As the employer of the Detective Defendants, the City is liable for Defendants' wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

109. Plaintiff Dennis Simon has been damaged because of Defendants' wrongful acts.

## EIGHTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Malicious Prosecution Under the Fourth and Fourteenth Amendments

### (Against the Parole Defendants)

110. Plaintiffs repeat and reallege each and every allegation set forth above.

111. By the actions described above, the Parole Defendants, acting under color of law, deprived Plaintiff Dennis Simon of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from malicious prosecution.

112. The Parole Defendants maliciously commenced and/or caused the continuation of parole revocation proceedings against Plaintiff Dennis Simon without probable cause or legal justification.

113. Defendants acted with actual malice.

114. The parole revocation proceedings terminated in Plaintiff Dennis Simon's favor.

115. The Parole Defendants failed to intervene in each other's obviously illegal actions.

116. Plaintiff Dennis Simon has been damaged because of Defendants' wrongful acts.

## NINTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Conspiracy

### (Against the Detective Defendants and the Parole Defendants)

117. Plaintiffs repeat and reallege each and every allegation set forth above.

118. As set forth above, the Detective Defendants and the Parole Defendants, acting under color of law, agreed to deprive Plaintiff Dennis Simon of the constitutional rights secured

by 42 U.S.C. § 1983 and the United States Constitution and took overt actions in furtherance of such conspiracy.

119.　Such conduct violated Plaintiff Dennis Simon's rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and Plaintiff has been damaged because of Defendants' wrongful acts.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.　For compensatory damages in an amount to be determined at trial;

b.　For punitive damages against the individual Defendants to the extent allowable by law;

c.　For costs, disbursements, and reasonable attorneys' fees under 42 U.S.C. § 1988, N.Y.C. Admin. Code § 8-805, and the inherent powers of this Court;

d.　For pre- and post-judgment interest as allowed by law; and

e.　For such other and further relief as this Court deems just and proper.

Dated: August 17, 2022
　　　New York, NY

　　　　　　　　　　　　　　　　　　　　THE FU FIRM PLLC

　　　　　　　　　　　　　　　　　　　　By: */s/ Yan Fu*
　　　　　　　　　　　　　　　　　　　　　　Yan Fu
　　　　　　　　　　　　　　　　　　　　　　43 W. 43rd Street, Suite 205
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　　　　　　　　(212) 584-0581
　　　　　　　　　　　　　　　　　　　　　　yfu@thefufirm.com
　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs*